## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **IN RE INPHONIC, INC., WIRELESS PHONE REBATE LITIGATION** | : : : : : | **Misc. Action No. 06-0507 (ESH)** **MDL Docket No. 1792** |
| **This Document Relates To:** **ALL CASES** | : : : | |

### DEFENDANT CONTINENTAL PROMOTION GROUP, INC.'S MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT AND SUPPORTING STATEMENT OF POINTS AND AUTHORITIES

Defendant Continental Promotion Group, Inc. moves the Court for an Order dismissing all claims against it in the Second Amended Class Action Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. This motion is supported by the following Statement of Points and Authorities.

### STATEMENT OF POINTS AND AUTHORITIES

### I. ISSUES PRESENTED

This is a consolidated class action in which plaintiffs filed their Second Amended Class Action Complaint ("Second Amended Complaint") on or about March 21, 2008. In the Second Amended Complaint, plaintiffs have joined several new defendants who are the individual officers or directors of InPhonic. InPhonic filed for bankruptcy protection in November of 2007. Plaintiffs have asserted additional claims against Continental Promotion Group, Inc. ("CPG") and Helgeson Enterprises, Inc. ("Helgeson"). CPG has been sued on claims under the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and the common law for alleged unjust enrichment and civil conspiracy.

The Second Amended Complaint should be dismissed against CPG for several reasons. In this their third try, plaintiffs have failed to state a valid RICO claim against CPG. The complaint fails to allege with particularity any acts or conduct of CPG which would constitute participating in mail or wire fraud. The RICO claims are also deficient in failing to properly allege facts to support the association in fact enterprise as having any continuity or separate existence apart from the alleged predicate acts. It further fails to allege facts to support a claim that CPG participated in the conduct of the affairs of the enterprise. The RICO conspiracy claim is deficient for the same reasons and additionally fails to allege the requisite agreement.

The state law claims are also deficient as a matter of law. The unjust enrichment claim fails to state a claim because there is no allegation of fact to support any benefit received by CPG from the plaintiffs. A common law conspiracy claim is a derivative action based upon a separate independent tort, and if the RICO claims against CPG fail, the civil conspiracy claim must fail as well.

When boiled down to the facts alleged against CPG, the Second Amended Complaint asserts that CPG provided contract services to InPhonic in processing rebate claims and that it was tardy in doing so in certain circumstances. At most, the Second Amended Complaint alleges a potential breach of contract claim between InPhonic and CPG, a contract to which plaintiffs were not parties and in which plaintiffs have no rights to seek a remedy. RICO was enacted to address organized criminal conduct and should not be used to turn an ordinary commercial dispute into claims of "racketeering."

## II. THE PLEADINGS

While the Second Amended Complaint is lengthy, it is devoid of facts relating to the alleged conduct of CPG. In ¶ 1, plaintiffs specifically allege: "Plaintiffs, like the members of

the Classes, relied upon false, misleading and deceptive advertisements disseminated, or caused to be disseminated by the Individual Defendants nationwide...." It is then alleged that plaintiffs "purchased wireless devices and/or wireless service plans from InPhonic." *Id.* While the summary includes the conclusory allegation that the Individual Defendants acted in concert with CPG, there are no alleged facts to support that CPG was involved in the initial advertising constituting mail or wire fraud.

### The Parties

The Second Amended Complaint then proceeds to allege the purchase of cellular phones or service by each of the 13 plaintiffs. Six of these named plaintiffs, Davis, Rock, Yu, McGivney, Salzman and Pevnick, are alleged to have purchased the phone or phone service from InPhonic before there was any alleged contractual relationship between InPhonic and CPG. Of these six plaintiffs, plaintiffs Davis, Yu, McGivney and Pevnick assert that their rebate claim was never denied, but simply never finally determined. Plaintiff Rock is the sole plaintiff of these four who alleges that his claim was actually denied, but alleges that denial was by InPhonic, not CPG.[1]

For the remaining seven plaintiffs who allege to have purchased a service from InPhonic during the contract period with CPG from July 2005 to July 2006, all but one of those plaintiffs admit that their rebate claim still remained pending when they elected to file suit. *See, e.g.,* ¶ 11, Sutherland, ¶ 12, Cover, ¶ 13, Roquemore, ¶ 14, Morales, ¶ 16, Feldman, ¶ 18, Heller. Workman is the only plaintiff who alleges a claim arising from a purchase during the CPG contract that was finally denied. *See* ¶ 19. Plaintiff Workman alleges that she purchased a Motorola RAZR

---

[1] While plaintiff Salzman alleges that her claim was initially denied by *InPhonic*, Salzman ultimately alleges that her claim "had not been formally accepted or rejected" when she filed suit. Second Amended Complaint, ¶ 15.

V3 telephone and Cingular Wireless service plan in August of 2005. Plaintiff Workman alleges that on September 11, 2006 she received a letter from *InPhonic* stating the rebate claim had been denied. *Id.* Workman's denial was months after CPG's involvement with processing InPhonic rebates had ended.

None of the plaintiffs allege that CPG had anything to do with InPhonic's creation of the requirements for the rebates or that CPG ultimately denied their claim. Plaintiffs' individual factual allegations establish nothing other than their rebate claims were either denied by InPhonic and/or never determined during the CPG contract period.

The Second Amended Complaint then describes the alleged role of the Individual Defendants. The plaintiffs allege "at all times relevant hereto, the Individual Defendants, by virtue of their high-ranking corporate positions, actually operated InPhonic's day-to-day business and, consequently, purposefully devised, were involved in and/or knew about the scheme or artifice to defraud plaintiffs..." *Id.* at ¶ 20(g). Plaintiffs further allege that these Individual Defendants "were responsible for designing and/or approving InPhonic's false, misleading and deceptive advertising of wireless devices, ..." *Id.* In a conclusory fashion, plaintiffs assert that CPG acted in concert with defendants with this alleged scheme to delay or reject rebate claims, without any factual allegations to support the statement. *Id.*

In ¶ 21 of the Second Amended Complaint, plaintiffs allege that CPG contracted with InPhonic from July of 2005 until July 2006 to process rebate claims without alleging anything further as to CPG's involvement in the alleged scheme.

### The "Factual" Allegations

In the "factual allegations" of the Second Amended Complaint, ¶¶ 24-45, plaintiffs make numerous assertions regarding InPhonic's alleged deceptive advertising on rebate claims, none of

which involve any allegations related to CPG. In a conclusory fashion, plaintiffs merely allege that "from July of 2005 to July 2006, the Individual Defendants and CPG acted in concert to carry out the same schemes to defraud" with no other factual allegations. *Id.* at ¶ 33. The Second Amended Complaint then alleges eight "undisclosed limitations," the first seven of which contain no reference or statement related to CPG. In fact, the only allegations in the factual section related to CPG are contained in ¶ 45 of the Second Amended Complaint. In undisclosed limitation eight, plaintiffs assert that CPG did not "promptly process rebate requests, if at all." *Id.* ¶ 45. There are no other factual allegations against CPG in this "fact" section of the pleading.

The Second Amended Complaint then proceeds with the definition of two classes: a rebate term class in which CPG would not be involved as a defendant as it relates solely to the terms of the rebate plans; and a rebate deprivation class relating to the alleged delays or denials in processing rebates. *Id.* ¶ 46.

## The Causes Of Action

CPG is first named in the RICO claims contained in the third cause of action. Plaintiffs allege that the claim arises under 18 U.S.C. §§ 1962(c) and 1962(d). Paragraph 75 contains the critical allegations (or lack thereof) regarding the enterprise for the RICO violations. Plaintiffs allege that InPhonic and CPG constituted an "association in fact enterprise." In this critical and deficient paragraph, plaintiffs allege that this association in fact enterprise between InPhonic and CPG contained a basic decision making structure and that there was a "common purpose" to increase their respective revenue and profits by "frustrating, delaying and ultimately denying rebate claims," without any alleged facts that CPG's contract payments were based upon delaying

or denying rebate claims.[2]  The structure of the association-in-fact enterprise is alleged to be contained solely in "the respective contractual agreements between InPhonic and Helgeson and InPhonic and CPG...."  *Id.* ¶ 75, p. 38.

. The alleged activity of the enterprise is then asserted as the processing of rebate claim forms, the same activity that constituted the predicate acts.  *Id.*  Plaintiffs assert that this alleged association in fact enterprise had an identity or existence separate and apart from the racketeering activity because InPhonic and CPG were separate entities, *without alleging that the enterprise itself had a separate existence.*

The "RICO Statement" attached as Appendix A to the Second Amended Complaint does not provide any further clarification of the defective pleadings, but merely reiterates an unsupported common purpose to increase profits for each of the defendants and a structure "evidenced" by the contract between CPG and InPhonic. *See* RICO Statement, Questions 6 and 7, pp. 49-50 of Second Amended Complaint. The same error continues in the RICO Statement regarding the separate identity of the *enterprise* by plaintiffs mistakenly looking to the separate identity of each of the corporate entities, rather than the association-in-fact enterprise itself.  *See* RICO Statement, Question 6, p. 49.  As to the separate activity of the enterprise from the racketeering activity, plaintiffs again only state in conclusory fashion that the "racketeering activity" differed from the "usual, daily and lawful activities" of the CPG/InPhonic enterprise. RICO Statement, Question 8, pp. 50, 51. Yet, the Second Amended Complaint asserts that there was not, in essence, any lawful activity of the "enterprise" as it was solely to "delay, frustrate or

---

[2] There is a conclusory allegation on "information and belief" that CPG profited by delaying or denying claims, which is insufficient.

deny rebate claims." Plaintiffs once again have confused the enterprise and the separate corporate existence of its alleged members.

Paragraph 76 alleges in conclusory fashion that CPG conducted or participated in the conduct of the affairs of the CPG/InPhonic association-in-fact enterprise through a "pattern of racketeering activity." This conclusory statement is not supported by any of the previous allegations in the Second Amended Complaint. As to the alleged acts of mail fraud or wire fraud, plaintiffs assert six separate activities involving the mail or wire. Subparagraph (a) alleges the posting of advertisements, which would be an activity of InPhonic only. The same for Subparagraph (c) regarding rebate status check pages on InPhonic websites. Subparagraph (d) refers to the communications from service providers such as Verizon relating to rebate claims submitted by plaintiffs, without identifying who was the recipient, but which arguably could only be plaintiffs or InPhonics. Subparagraph (b) refers to receipt of rebate claim forms which potentially could have been received by CPG, but there is nothing allegedly fraudulent in the mere receipt of these claims. Subparagraphs (e) and (f) refer to correspondence allegedly sent by InPhonic, Helgeson and/or CPG. Yet, the factual allegations in paragraphs 7 through 19 upon which plaintiffs allege the predicate mail or wire fraud and are devoid of specific allegations relating to CPG making any false or misleading communications. Again, nothing is added by the RICO Statement response to Question No. 5.

In paragraph 77 of the Second Amended Complaint, plaintiffs then attempt to assert a conspiracy under section 1962(d). This again only includes conclusory allegations that CPG "conspired to conduct or participate in the conduct of the affairs of the CPG – InPhonic association-in-fact enterprise through a 'pattern of racketeering activity.'" *Id.* There is no allegation of an agreement by CPG to participate in any alleged conspiracy of mail or wire fraud

and no facts pled from which a conspiracy could even be inferred. The response to Question No. 14 of the RICO Statement again adds no further clarity.

In the sixth cause of action, plaintiffs attempt to assert a common law claim for unjust enrichment against CPG. This claim is also insufficient as a matter of law. Plaintiffs allege that "defendants" have been unjustly enriched "by unlawfully retaining rebate claim payments owed to plaintiffs and to members of the classes." ¶ 89. There is no allegation that any of the payments from the plaintiffs were made to CPG or in its possession. As a matter of law, therefore, the sixth cause of action fails to state a claim for unjust enrichment.

Finally, plaintiffs assert an eighth cause of action for alleged civil conspiracy involving the Individual Defendants, CPG and Helgeson. A civil conspiracy claim is a derivative action which requires an independent tort. The independent tort upon which plaintiffs base their civil conspiracy are violations of sections 1962(c) and (d) of RICO. As the RICO claims are deficient against CPG, the civil conspiracy claim as a derivative claim is also deficient. In addition, the Second Amended Complaint fails to allege the requisite elements for a civil conspiracy.

The only facts alleged against CPG in the entire Second Amended Complaint is that it had a contract to process rebate claims from July, 2005 to July, 2006 and that during that period of time, certain of the named plaintiffs claims were not finally determined, from which plaintiffs wish to infer an intent to delay. These facts support nothing other than CPG providing services as an independent contractor to InPhonic and certainly are not sufficient to subject CPG to the significant costs of remaining a party in this litigation any longer. The pleadings are insufficient to state a valid claim against CPG and CPG should be dismissed with prejudice.

### III.    STANDARD OF REVIEW

The standards for a 12(b)(6) motion were summarized in *Bates v. Northwestern Human Services, Inc.*, 466 F.Supp.2d 69, 77 (D.D.C. 2006). In considering a motion to dismiss under Rule 12(b)(6), the court "must treat the complaint's factual allegations as true and must grant [the] plaintiff[s] the benefit of all reasonable inferences [that can be derived] from the facts alleged." *Trudeau v. FTC*, 456, F.3d 178, 193 (D.C. Cir. 2006) (internal remarks and citations omitted). However, "legal conclusion[s] couched as ... factual allegation[s]" and inferences unsupported by the facts alleged need not be accepted. *Id.* "Bare conclusions of law and sweeping and unwanted averments or fact will not be deemed admitted" *M.K. v. Tenet*, 99 F.Supp.2d 12, 17 (D. D. C. 2000). The court may consider the facts alleged in the complaint as well as documents attached as exhibits. *Equal Employment Opportunity Commission v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### IV.  THE SECOND AMENDED COMPLAINT FAILS TO STATE A VALID RICO CLAIM

Stating a RICO claim requires pleading the essential elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S. Ct. 3275 (1985). The predicate acts must be alleged with particularity under Rule 9(b) for the alleged involvement of each defendant.    The Second Amended Complaint fails to meet this standard for the claims against CPG.

A critical element in pleading a RICO violation is the enterprise. In the current action, plaintiffs allege an "association in fact" enterprise between InPhonic and CPG. The association-in-fact enterprise requires:  (1) that the associated individuals form an ongoing formal or informal organization; (2) the organization functions as a continuing unit; (3) which is separate and distinct from the underlying predicate criminal activity. *See United States v. Turkette*, 452

U.S. 576, 583, 101 S.Ct. 2524 (1981). In asserting a claim under 1962(c), plaintiffs must also allege that the defendant participated in the conduct of the affairs of the enterprise. In *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163 (1993), the Supreme Court adopted an "operation or management test." As stated by the *Reves* court: "In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs', one must have some part in directing those affairs." 507 U.S. at 179. Plaintiffs' Second Amended Complaint fails to properly plead an enterprise or to allege facts to support a claim that CPG participated in the conduct of the affairs of any such enterprise. For those reasons, the Second Amended Complaint must be dismissed.

The RICO conspiracy claim also fails for these same reasons, as well as failing to allege any facts for CPG's purported agreement to participate in the scheme.

### The Complaint Fails to Assert the Predicate Acts with Specificity

Plaintiffs must allege at least two predicate acts of racketeering that form a pattern of racketeering activity. Plaintiffs claim that the predicate acts are mail and wire fraud which require a scheme to defraud, intent, and the actual use of the mail or wires in furtherance of the scheme. *See generally, Wisdom v. First Midwest Bank,* 167 F.3d 402, 406 (8th Cir. 1999).

These predicate acts must be pled with particularity pursuant to Rule 9(b). In *Bates v. Northwestern Human Services, Inc.,* the district court in dismissing RICO claims for failure to plead with particularity stated:

> It is well-settled in this and other Circuits that "[w]here acts of mail and wire fraud constitute the alleged predicate racketeering [activity] these acts are subject to the heightened pleading requirement of [Federal Rule of Civil Procedure] 9(b)" *Warden v. McLelland,* 288 F.3d 105, 114 (3d Cir. 2002) (citation omitted); *see, e.g. Peskoff v. Faber,* 230 F.R.D. 25, 31-32 (D.D.C. 2005) (observing that "the particularity requirement of Rule 9(b) applies with full force when fraud is identified as a predicate act to a pattern of racketeering activity under RICO").

466 F.Supp.2d at 88. The *Bates* court continued to elaborate on what this requires in pleading mail and wire fraud:

> In accordance with Rule 9(b), plaintiffs alleging fraud must further "state the time, place and content of the false misrepresentation, the fact misrepresented[,] and what was retained or given up as a consequence of the fraud." *Martin-Baker Aircraft*, 389 F.3d at 1256 (internal quotation marks and citations omitted); *see Intex Recreation Corp. v. Team Worldwide Corp.*, 390 F.Supp.23 21, 24 (D.D.C. 2005) (stating that "[t]he particularity requirement of Rule 9(b) demands that the pleader specify what [fraudulent] statements were made and in what context, when they were made, who made them, and the manner in which the statements were misleading). . . ."

466 F.Supp.2d at 89. *See, also, Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994); *Zandford v. NASD*, 19 F. Supp.2d 4, 9 (D.D.C. 1998).

This is in accord with the general circuit law on pleading RICO claims. Rule 9(b) requires pleading the "identity of the person who made the misrepresentation, the time, place and content of the misrepresentation and the method by which the misrepresentation was communicated to plaintiff." *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (citations omitted). *See, also, Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 729 (7th Cir. 1998); *In re Mastercard Int'l, Inc.*, 132 F.Supp.2d 468, 482 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002); *Midwest Grinding Co. v. Sptiz*, 976 F.2d 1016, 1020 (7th Cir. 1992). In meeting this heightened pleading requirement where multiple defendants are involved, the allegations cannot "lump the defendants together" in conclusory fashion. *Bates,* 466 F.Supp.2d at 92; *Goren,* 156 F.3d at 730, *In re MasterCard,* 132 F.Supp.2d at 482. The complaint "should inform each defendant of the nature of his alleged participation in the fraud." *Vicom,* 20 F.3d at 778 (citations omitted).

The Second Amended Complaint here, as previously discussed, is deficient in this regard. It is wholly lacking allegations regarding any misrepresentations by CPG to any of the plaintiffs. It further lacks any factual allegations that CPG was aware of and agreed to participate in any fraud by InPhonic's advertising and offering of rebates through the mail or wire. There is nothing to provide CPG with any type of notice of what it did in participating in the alleged mail and wire fraud, allegedly conducted by InPhonic beginning with its rebate advertisements and offers which were in place prior to CPG contracting with InPhonic.

The only allegation that may give any notice to CPG on its claimed participation in this alleged fraud is that it is asserted to have been compensated for delaying or denying rebate claims. This paragraph is pled on "information and belief" which is not sufficient for satisfying Rule 9(b) in allegations of civil RICO claims. *See, e.g. DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2nd Cir. 1987); *Banco de Desarrollo Agropecuario v. Gibbs*, 640 F. Supp 1168, 1176 (S.D. Fla. 1986).

While Paragraph 76(e) and (f) allege various acts including letters and e-mail messages between plaintiffs and InPhonic, Helgeson and/or CPG, there is no factual allegation of any misrepresentation by CPG. The factual allegations against CPG constitute nothing more than a claim that it contracted to process rebate claims between July of 2005 and 2006 and that it had not completed processing certain claims for the named plaintiffs after several months when each plaintiff filed suit. Beyond this, all other allegations against CPG are merely conclusory statements.

### The Second Amended Complaint Fails to Allege an Enterprise

The first element under *Turkette* for an association in fact enterprise is an ongoing formal or informal organization. This element is generally viewed as requiring a structure amongst the members of the association in fact enterprise, whether hierarchal or consensual. *See, e.g., Landry v. Air Line Pilots Association Int'l. AFL-CIO*, 901 F.2d 404, 433 (5th Cir. 1990); *United States v. Korando*, 29 F.3d 1114, 1117 (7th Cir.), *cert. denied* 513 U.S. 993 (1994) ("The hallmark of an enterprise is a 'structure'"). "[S]imply conspiring to commit a fraud is not enough to trigger the Act if the parties are not organized in the fashion that would enable them to function as a racketeering organization for other purposes." *Vandenbroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000).

The enterprise must have a "command structure" that operates to sustain the association separate and distinct from the legitimate business relations. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 676-77 (7th Cir. 2000); *In re Mastercard*, 132 F.Supp.2d at 485. To establish this, plaintiff must offer more than conclusory allegations, but plead *facts* to show the existence of this organizational structure. *See, e.g., In re MasterCard*, 132 F.Supp.2d at 486; *Broyles v. Wilson*, 812 F.Supp. 651, 657 (M.D. La. 1993), *aff'd w/o op.* 3 F.3d 439 (5th Cir. La. 1993). For a claim under RICO, "more detail is required to determine whether any of the defendants were conducting something other than their own, usual business activities in the course of perpetrating the alleged (fraud)." *Bates v. Northwestern Human Services, Inc.*, 469 F.Supp.2d at 86.

Federal courts have repeatedly held that merely alleging a business or contractual relationship is not sufficient to establish an organization sufficient to support a RICO enterprise. *See Vandenbroeck v. Common Point Mortgage Co.*, 210 F.3d at 700; *Ulico Casualty Co. v. Professional Indemnity Agency, Inc.*, 1999 U.S. Dist. LEXIS 8591, * 22 (D.D.C. 1999) (mere

business relationship while performing services is not enough to establish an enterprise); *800537 Ontario, Inc. v. Auto Enterprises, Inc.*, 113 F.Supp.2d 1116, 1123 (E.D. Mich. 2000) (activities engaged in the parties' business relationship is insufficient to establish a structure for an ongoing enterprise); *In Re MasterCard*, 132 F.Supp.2d at 486-87 (no factual allegations supporting an enterprise beyond defendant's conducting a normal business relationship).

Plaintiff's Second Amended Complaint attempts to meet this requirement by pleading that the structure of this alleged association in fact enterprise is "evidenced" by the CPG contract with InPhonic. Second Amended Complaint, ¶ 75. The fact that CPG contracted with InPhonic demonstrates nothing other than a business relationship by which CPG provided rebate processing services. There is no alleged consensual or hierarchical structure for carrying out the decisions of this alleged enterprise to complete this scheme.

In addition to a structure and ongoing organization, the enterprise must be distinct from the predicate activity. The enterprise is not itself the pattern of racketeering activity, but "is an entity separate and apart from the pattern of activity in which it engages." *Turkette,* 452 U.S. at 583. "The same group of individuals who repeatedly commit predicate offenses do not necessarily comprise an enterprise." *United States v. Perholtz,* 842 F.2d 343, 363 (D.C. Cir. 1988). There must be an organization apart from the alleged predicate offenses. *Id.* Unless an ongoing separate enterprise apart from the alleged predicate acts is alleged, RICO could be misconstrued to make every alleged fraud involving more than one person a RICO violation. *See generally, Bachman v. Bear, Sterns & Co., Inc.,* 178 F.3d 930, 932 (7ᵗʰ Cir. 1999).

Again, plaintiffs' Second Amended Complaint is deficient. Plaintiffs alleged that the association in fact enterprise of InPhonic and CPG had a separate identity and existence apart from the alleged racketeering activity of mail and wire fraud because InPhonic and CPG were

separate corporate entities. This misses the point. The question is not whether the two members of the alleged association in fact enterprise have a separate identity apart from the racketeering activity, but whether their association itself, i.e., the enterprise, has a separate identity. There is no alleged separate identity for the CPG and InPhonic association in fact enterprise except for the alleged acts of delaying or denying rebate claims, which is the alleged mail and/or wire fraud racketeering activity. In order to meet this requirement, plaintiffs would need to plead *facts* that demonstrate some organization for their alleged association beyond the completion of those predicate acts. Nothing is alleged regarding any ongoing association between InPhonic and CPG except to allegedly conduct the racketeering activity. As such, the Second Amended Complaint fails to assert any separate existence of the alleged enterprise from the commission of the predicate acts.

### The Second Amended Complaint Fails to Allege CPG's Participation in the Conduct of the Affairs of the Enterprise

In *Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163 (1993), the Supreme Court specifically held that a section 1962(c) RICO claim requires that the RICO person participate in the "conduct of the affairs of the enterprise." *Reves* held that "In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." 507 U.S. at 179. The Court further explained that this would not limit liability to upper management, but was not so broad that it would reach complete "outsiders" "because liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." 507 U.S. at 540.

Since *Reves*, courts have continually required that the pleadings allege the defendant's involvement in the operation or management of the enterprise as distinct from merely participating in the alleged fraud. *See, e.g., Vandenbroeck v. CommonPoint Mortgage Company,*

210 F.3d at 699; *Securities Investor Protection Corp. v. Holmes*, 76 F.3d 388 (9th Cir. 1996) (finding that the alleged activity of a brokerage firm may constitute participation in fraud, but would not constitute participation in the "operation or management" of the firms); *James Cape & Sons, Co. v. PCC Const., Co.*, 453 F.3d 396, 402 (7th Cir. 2006) (affirming motion to dismiss RICO claim where pleadings failed to establish control over the core functions of the alleged enterprise); *Goren v. New Vision International, Inc.*, 156 F.3d at 727 (7th Cir. 1998) ("In short, mere participation in the activities of the enterprise is insufficient; the defendant must participate in the operation or management of the enterprise.")

The D.C. District Court considered the application of *Reves* in *Ulico Casualty, Co. v. Professional Indemnity Agency, Inc.*, 1999 U.S. Dist. LEXIS 8591. In *Ulico*, the district court considered RICO claims by an insurance company against a former contract provider, Professional Indemnity Associates, Inc. ("PIA"). PIA was responsible for collecting and maintaining Ulico's business records pursuant to a contract. The court found that the pleadings were deficient in that they did not allege anything beyond a mere business relationship by which Ulico performed services. *Id.* at *21-22. It further found that based upon the contract, the defendant PIA was to take its instructions from Ulico, rather than direct the activities of Ulico: "Ulico's agreement with PIA clearly establishes a relationship where PIA was to take its instructions from Ulico. Based upon the plain language of the Agreement, there can be no dispute that PIA did not control Ulico in such a manner as to constitute an enterprise pursuant to § 1962(c)." *Id.* at *22-23.

Similarly, in *Bates v. Northwestern Human Services, Inc.*, 469 F.Supp.2d at 85, the D.C. District Court, quoting from *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163, 121 S.Ct. 2087 (2001), held that the pleadings failed to establish that defendants were "conduct[ing]

or participat[ing] in the conduct of the *enterprise's* affairs, not just their own affairs." The *Bates* court held that a RICO enterprise required showing more than the defendant corporation committed a pattern of predicate acts in the conduct of his own business. *Id.* at 86. *See also, In re Mastercard*, 132 F.Supp.2d at 489 (finding that the complaint was deficient in that there was no allegation to establish that there was any exercise of control over the enterprise by the credit card companies and recognizing that "providing important services to a racketeering enterprise is not the same as directing the affairs of the enterprise.")

Here, the alleged contract between InPhonic and CPG provided that CPG would process InPhonic's rebate claims. This business relationship does not demonstrate any ability of CPG to control an association between InPhonic and CPG. The alleged contract only establishes that CPG was a service provider to process rebate claims pursuant to criteria previously established by InPhonic. Providing services through a business relationship to the alleged enterprise does not constitute conducting the affairs of the enterprise for RICO liability. Even taking plaintiff's conclusory allegations that CPG delayed processing of claims for its alleged own benefit, the participation in the alleged predicate activity does not constitute control of the affairs of the enterprise.

### Plaintiffs Have Failed to Allege a Conspiracy Claim Under § 1962(d)

Buried within the third cause of action, plaintiffs attempt to also allege a separate claim under section 1962(d) for an alleged conspiracy. The allegations regarding this purported conspiracy are contained in paragraph 77 of the Second Amended Complaint. The sole allegation against CPG is that it and the Individual Defendants conspired to conduct the affairs of the CPG-InPhonic association in fact enterprise.

To allege a RICO conspiracy, plaintiff must allege sufficient facts to first establish an enterprise engaged in predicate activities and then additionally assert "that each defendant knowingly agreed to the commission of a violation of 18 U.S.C. § 1962(c)." *United States v. Phillip Morris USA, Inc.,* 449 F.Supp.2d 1, 901 (D.D.C. 2006). The RICO conspiracy claim fails for the same reasons that the section 1962(c) claim fails. The plaintiffs fail to allege the predicate acts upon which the conspiracy would be based with sufficient particularity and fail to state a valid association in fact enterprise. Where the substantive claim fails under 1962(c), the conspiracy claim also fails. *See First Capital Asset Management Inc. v. Satinwood, Inc.,* 385 F.3d 159, 182 (2d Cir. 2004).

Separate and apart from those reasons, the conspiracy claim itself has its own pleading deficiencies. In *Salinas v. United States,* 522 U.S. 52, 118 S.Ct. 469, 118 S.Ct. 469 (1997), the U.S. Supreme Court held that a conspiracy "may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense." *Id.* at 63. It elaborated by stating "A conspirator must intend to further an endeavor which, if completed, would satisfy all the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Id.* at 65.

In interpreting the broad general concepts of *Salinas,* the Seventh Circuit in *Brouwer v. Raffensperger,* 199 F.3d 961, 967 (7th Cir. 2000), *cert. denied* 530 U.S. 1243 (2000), concluded:

> To conspire to commit a subsection (c) offense, one would not need, necessarily, to meet the *Reves* requirements; one does not need to agree personally to be an operator or manager. On the other hand, one cannot conspire to violate subsection (c) by agreeing that somehow an enterprise should be operated or managed by someone. That would impose meaningless requirements and cast a frighteningly wide net. Rather, one's agreement must be to knowingly facilitate the activities of the operators or managers to whom subsection (c) applies. One must knowingly agree to perform services of a kind which facilitate the

> activities of those who are operating the enterprise in an illegal
> manner. It is an agreement not to operate or manage the enterprise,
> but personally to facilitate the activities of those who do.

*See, also, Goren v. New Vision International, Inc.,* 156 F.3d at 732 ("from a conceptual

standpoint a conspiracy to violate RICO can be analyzed as composed of two agreements...: an

agreement to conduct or participate in the affairs of an enterprise and an agreement to the

commission of at least two predicate acts"); *United States v. Cummings,* 395 F.3d 392, 397 (7th

Cir. 2005) ("agreement must be to knowingly facilitate the activities of the operators or managers

to whom [1962(c)] applies").

There are absolutely no facts alleged of any agreement between any Individual Defendant

and CPG. There is no allegation of any communications whatsoever between CPG and these

Individual Defendants. At most, the allegations demonstrate that CPG entered a contract with

InPhonics and that some InPhonics personnel were allegedly at CPG's processing center. There

is no link in any fashion between CPG and the Individual Defendants upon which a conspiracy

claim may stand.

## V. THE COMMON LAW CLAIMS AGAINST CPG
## SHOULD BE DISMISSED

It is unclear from the Second Amended Complaint whether plaintiffs allege jurisdiction

for the common law claims independently based upon 28 U.S.C.§ 1332(d) (Second Amended

Complaint, ¶ 4) or, alternatively, the Court's supplemental jurisdiction under 28 U.S.C. § 1367

(Second Amended Complaint, ¶ 6). To the extent that this is premised upon supplemental

jurisdiction, the Court should decline to exercise that jurisdiction. *See Danielsen v. Bernside-Ott*

*Aviation Center, Inc.,* 941 F.2d 1220, 1232 (D.C. Cir. 1991); *Ganzi v. The Washington Baltimore*

*Regional 2012 Coalition,* 98 F.Supp.2d 54, 58-59 (D.D.C. 2000). If the Court finds that

diversity jurisdiction has been adequately pled or chooses to retain jurisdiction under 28 U.S.C.

§ 1367, the common law claims against CPG should still be dismissed because they fail to state a valid claim for relief.

### Count Six for Unjust Enrichment Must Be Dismissed.

The sixth cause of action attempts to state a common law claim for unjust enrichment. Plaintiffs assert that the claim arises under the laws of the District of Columbia. It is CPG's position that claims for unjust enrichment for the putative class members may be governed by the common law of several different states, making the claim unmanageable for class action certification. As a transferee court, this Court must apply the choice of law rules of the states where the transferor court sits. *See In re Korean Airlines Disaster of September 1, 1983*, 932 F.2d 1475, 1496 (D.C. Cir.), *cert. denied* 502 U.S. 994 (1991). Accordingly, this Court will need to determine under the choice of law rules of each of the tranferor courts, Alabama, Arizona, California, Illinois and New Jersey, what law will apply to the common law claims. For the unjust enrichment claims, the law may vary from state to state in making this determination. *See In re: Prempro*, 230 F.R.D. 555, 563 (E.D. Ark. 2005); *In re: Baycol Products Litigation*, 218 F.R.D. 197, 214 (D. Minn. 2003).

Without undertaking that entire analysis at this juncture, the unjust enrichment claim should still be dismissed as defective as a matter of law. The claim is asserted against defendants collectively, without individual allegations as to each defendant, and asserts that defendants were unjustly enriched by "lawfully retaining rebate claim payments owed to claimants and to members of the classes." Second Amended Complaint, ¶ 89. Thus, the claim must be read as asserting that plaintiffs' rebate claim payments benefited CPG. Yet there is no allegation that CPG kept for its own benefit funds for the rebate claims allegedly owed to the plaintiffs.

While states may vary on the specific elements for a claim for unjust enrichment and/or defenses to that claim, it is virtually universal that the claim must be based upon the defendant having received something from the plaintiff which should be restored. In *Rapaport v. United States Dept. of Treasury, Office of Thrift Supervision*, 59 F.3d 212 (D.C. Cir. 1995), *cert. denied* 516 U.S. 1073 (1996), the D.C. Circuit stated: "the fundamental characteristic of unjust enrichment is 'that the defendant has been unjustly enriched by receiving something. . . that properly belongs to the plaintiff [, thereby] forcing restoration to the plaintiff.' *Dobbs,* LAW OF REMEDIES, Sec. 4.1(2)." 59 F.3d at 217. The D.C. Circuit found that Florida law was typical of other states in requiring the following elements: "(1) the plaintiff conferred a benefit upon the defendant; (2) the defendant accepted and retained the benefit; and (3) it would be unjust for the defendant not to pay the plaintiff the value of the benefit." *Id.* at p. 217. While the elements have been stated in different fashions by other District of Columbia decisions, the basic nature of the claim requires that plaintiff has provided a benefit to the defendant, which in equity the defendant should repay to the plaintiff. *See, e.g., Ellipso, Inc. v. Mann, 460 F.Supp.2d 99(D.D.C. 2006); Nevius v. Africa Inland Mission Int'l,* 511 F.Supp.2d 114, 122 (D.D.C. 2007).

It is fundamental to this claim that the *plaintiff* be the one conferring the benefit on the defendant who is to repay. As found by the Court in *Rapaport*, an "unjust enrichment simply does not lie when the plaintiff has not bestowed some sort of benefit upon the defendant." 59 F.3d at 217. *See, also, Scanwell Laboratories, Inc. v. Thomas,* 521 F.2d 941, 949-50 (D.C. Cir. 1975), *cert. denied* 425 U.S. 910 (1976), ("while the remedy is sometimes applied when a plaintiff is not the person conferring the benefit on the defendant, as where a stranger augments the defendant's goods with those of the plaintiff, . . . it is usually necessary for the plaintiff to show that he conferred the benefit.")

To the extent the law of the District of Columbia applies, the result would be the same. See *Kramer Associates, Inc. v. Ikam, Ltd.,* 888 A.2d 247, 254 (D.C. App. 2005) ("the party who retains the benefit is obliged to make restitution to the person who conferred the benefit"); *News World Communications, Inc. v. Thompsen,* 878 A.2d 1218, 1222 (D.C. Ct. App. 2005) ("Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefits; and (3) under the circumstances, the defendant's retention of the benefit is unjust.")

The current pleadings are deficient in that there is no allegation that the plaintiffs conferred a benefit upon CPG. One may argue that the plaintiffs conferred a benefit upon InPhonic when they purchased the phone or service in reliance upon subsequently receiving a rebate, and that InPhonic was unjustly enriched by retaining the funds from the initial purchase price and not issuing the anticipated rebate. Yet, this benefit was never conferred upon CPG. As such, the claim for unjust enrichment must fail.

**The Common Law Conspiracy Claim Must Be Dismissed**

The final count made against CPG is the eighth cause of action for civil conspiracy. Plaintiffs again assert that the law of the District of Columbia controls this common law claim. CPG again will argue that a choice of law analysis is required to determine whether the District of Columbia law or the law of several different states applies to this claim. In any event, much like the unjust enrichment claim, the civil conspiracy claim fails under the general principles of the common law throughout the United States.

In *Halberstam v. Welch,* 705 F.2d 472 (D.C. Cir. 1983), the D.C. Circuit court considered the elements for a civil conspiracy claim under the common law. Finding sparse District of

Columbia precedent, the court looked to the general law of conspiracy and declared the following general elements for a conspiracy claim:

> A list of the separate elements of civil conspiracy includes: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme.

*Id.* at 477.

In order to be held liable as a conspirator, there must be an agreement between the co-conspirators. In reviewing the District of Columbia precedent, the *Halberstam* Court then found that the claim requires some underlying tortious act and that it is not independently actionable, but "is a means for establishing vicarious liability for the underlying tort." *Id.* at 479. *See also, Hall v. Clinton*, 285 F.3d 74, 82 (D.C. Cir. 2002) (holding that a civil conspiracy is not an independent action apart from an underlying tort).

The Second Amended Complaint fails to allege a civil conspiracy under these standards. First, there is no independent tort claim for which the civil conspiracy claim can be used to impose vicarious liability. The Second Amended Complaint asserts that the underlying wrongful acts are the RICO violations. However, as previously demonstrated, the RICO violations must be dismissed and, therefore, there is no claim by which the derivative claim of civil conspiracy can be asserted. Second, the Second Amended Complaint is totally deficient in alleging any type of agreement between CPG and the Individual Defendants. This claim only alleges in a very conclusory fashion that CPG and the Individual Defendants agreed to take part in tortious acts under RICO. There is no factual allegation as to this agreement, nor of any communications of any nature between CPG and the Individual Defendants. Claims as serious as civil conspiracy should not be allowed to proceed without any factual basis.

## VI. CONCLUSION

The heart of this action is a breach of contract or even potentially a fraud committed by InPhonic. It is a "garden variety" commercial dispute. Due to InPhonic's financial plight, plaintiffs now attempt to transform this basic commercial dispute into claims of racketeering activity under a statute designed to reach organized crime. RICO does not extend to the claims asserted against CPG. The claims asserted against CPG in the Second Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

SHUMAKER, LOOP & KENDRICK, LLP

_____

C. Philip Campbell, Jr.
Florida Bar No. 160973
101 East Kennedy Blvd., Suite 2800 (33602)
P. O. Box 172609
Tampa, Florida 33672-0609
(813) 229-7600 / (813) 229-1660 (Fax)
pcampbell@slk-law.com
Attorneys for Continental Promotion Group, Inc.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 24th day of April, 2008, the foregoing Defendant Continental Promotion Group Inc.'s Motion to Dismiss the Second Amended Class Action Complaint and Supporting Statement of Points and Authorities with proposed Order was filed with the Court's electronic filing system, which provides service on all counsel of record for Defendant, and on Interim Co-Lead Counsel and Liaison Counsel for Plaintiffs for transmission by them to other Plaintiffs' counsel not registered on the Court's electronic filing system.

C. Philip Campbell, Jr.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **IN RE INPHONIC, INC., WIRELESS** | : | |
| **PHONE REBATE LITIGATION** | : | |
| | : | **Misc. Action No. 06-0507 (ESH)** |
| | : | **MDL Docket No. 1792** |
| **This Document Relates To:** | : | |
| **ALL CASES** | : | |
| | : | |

## ORDER

THIS CAUSE came to be heard upon Defendant Continental Promotion Group, Inc.'s Motion to Dismiss the Second Amended Class Action Complaint and Supporting Statement of Points and Authories. For the reasons set forth in the Statement of Points and Authorities and upon review of the Second Amended Class Action Complaint, the Court finds the motion well taken.

Plaintiffs' Second Amended Class Action Complaint is DISMISSED with prejudice as to Defendant Continental Promotion Group, Inc.

_____
Judge